IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER BURRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-3004-CV-S-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in October 1972 and has a high school education. Plaintiff alleges he became disabled on May 1, 2010, due to knee problems, high blood pressure, diabetes, and heart problems.

On September 5, 2010, Plaintiff went to the emergency room with pain and swelling in his left knee. R. 227. A magnetic resonance imaging ("MRI") revealed that Plaintiff had a lateral meniscal bucket-handle tear. R. 206, 231-32. Merwin Moore, M.D., performed surgery to remove the torn cartilage. R. 206, 247-48. Plaintiff was discharged on September 7, 2010. R. 206.

Plaintiff followed-up with Dr. Moore on September 23, 2010. R. 391. Plaintiff's left knee was tender at the surgical site, but no swelling was present. R. 392. Dr. Moore instructed Plaintiff to return in three weeks, but Plaintiff did not show up for the appointment. R. 392-93.

On November 9, 2010, Plaintiff presented to Curtis L. Horstman, D.O., to establish care. R. 372. Plaintiff reported he was still having pain in his right knee. R. 373. Upon examination, Plaintiff was alert and oriented. R. 373. Dr. Horstman diagnosed Plaintiff with hypertension and knee pain. R. 373.

Plaintiff returned to Dr. Horstman on November 23, 2010, reporting chest pain and knee pain. R. 367. Plaintiff appeared alert and oriented during the exam. R. 368. Plaintiff's right knee had no swelling, edema, instability, subluxation, laxity, or crepitus (crackling or popping). R. 368. Plaintiff's left knee had normal deep-tendon reflexes, coordination, and strength and tone. R. 368. Plaintiff's left knee had no instability, subluxation, laxity, or crepitus. R. 368. The left knee's range of motion was only mildly limited at end ranges. R. 368. Dr. Horstman prescribed medication and ordered various labs. R. 368.

On November 30, 2010, Plaintiff presented to David Denenny, M.D., complaining of knee pain. R. 354. However, during the examination, Plaintiff's knee pain was reported at a "0" on a scale of 0 to 10, with 10 being the worst. R. 354. Dr. Denenny diagnosed Plaintiff with probable internal derangement of his knees and ordered an MRI. R. 354.

Plaintiff saw Dr. Horstman in December 2010 to discuss lab results, which revealed diabetes mellitus. R. 360-61. Plaintiff reported he suffered from constant fatigue, but Plaintiff appeared alert and oriented during the exam. R. 361. Dr. Hortstman said Plaintiff's diabetes could be treated with diet and weight loss. R. 377.

Plaintiff returned to Dr. Denenny on January 7, 2011. R. 404. Dr. Denenny prescribed medication, stretching, and heat and ice for his knees. R. 404. He also recommended a Synvisc injection for Plaintiff's right knee. R. 404. That same day, Dr. Denenny completed a medical source statement—physical. He opined that Plaintiff could lift ten pounds frequently, five pounds occasionally, stand and/or walk 30 minutes continuously and two hours throughout the day, and sit continuously for 30 minutes and throughout an eight hour day for two hours. R. 395-96. Dr. Denenny limited Plaintiff's ability to push and/or pull because of "painful knee." R. 395. He opined that Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl. R. 395. Finally, Dr.

2

Denenny believed Plaintiff had to lie down every 30 minutes for 15 minutes at a time. R. 396.

On January 24, 2011, Dr. Denenny performed a left knee arthroscopy, chondroplasty, and debridement of lateral meniscus inner-rim tears. R. 470. After the procedure, Dr. Denenny diagnosed Plaintiff with minimal marginal tears and grade two chondromalacia of his patella. R. 470.

On February 1, 2011, Plaintiff followed-up with Dr. Denenny and received a cortisone injection. R. 402. Dr. Denenny recommended a cortisone injection for Plaintiff's right knee on return. R. 402. Plaintiff missed an appointment with Dr. Denenny scheduled for February 22, 2011. R. 401, 412.

On March 3, 2011, Plaintiff told Dr. Denenny that he quit his pain medications the prior week. R. 400. Dr. Denenny administered Synvisc injections in both knees. R. 399.

Plaintiff was incarcerated on March 11, 2011. R. 465. During an intake assessment, Plaintiff reported he had diabetes and high blood pressure but denied that he needed a brace or any other assistive device. R. 416, 463, 465. Alfred Garcia, M.D., prescribed Metformin for Plaintiff's diabetes and ordered daily blood-pressure readings. R. 422. Plaintiff refused blood pressure checks on numerous occasions while incarcerated. R. 443-44, 448.

During a physical examination on March 14, 2011, Plaintiff denied any musculoskeletal problems and exam records note that Plaintiff had "strong" extremities. R. 463-64. The next day, Plaintiff informed prison medical staff that he was doing "OK" since receiving Metformin for his diabetes. R. 428. On March 28, 2011, Dr. Garcia opined that Plaintiff's diabetes condition was "mild" and in "good" control. R. 439-40. Dr. Garcia encouraged Plaintiff to exercise. R. 439. On April 19, 2011, Ruanne Stamps, M.D., noted that medication had controlled Plaintiff's diabetes. R. 450-51.

On April 28, 2011, Plaintiff complained to prison medical staff of joint pain in his knees, but Plaintiff's knees had no swelling, heat, redness, or discoloration. R. 452. He also had full range of motion. R. 452.

Plaintiff presented to Dr. Stamps on May 9, 2011, complaining of knee pain. R. 454. He stated that his right knee had "locked" and his left knee popped and twisted.

3

R. 454. Plaintiff's knee was tender over the patellar tendons; however, his gait was steady, and he had no laxity or crepitus. R. 454-55. Dr. Stamps prescribed ibuprofen. R. 455.

While incarcerated, Plaintiff worked at the prison cafeteria. R. 454. Plaintiff was released from the Missouri Department of Corrections on July 8, 2011. R. 460.

On July 15, 2011, Plaintiff returned to see Dr. Horstman. R. 406. He said he stopped taking his medications while incarcerated. R. 406. Plaintiff complained that his diabetes caused fatigue, change in vision, and insomnia. R. 406. Plaintiff also reported knee pain, swelling, stiffness, difficulty bearing weight, and difficulty ambulating. R. 406. Plaintiff was in no acute distress and appeared alert and oriented. R. 407. His right knee had no swelling, edema, or laxity. R. 407. His left knee had no instability, subluxation, laxity, or crepitus. R. 407. Plaintiff had normal deep-tendon reflexes, normal coordination, and normal strength and tone in both knees. R. 407. Dr. Horstman prescribed medication (including Metformin for Plaintiff's diabetes) and ordered various labs. R. 407. The lab work revealed that Plaintiff's glucose levels were normal. R. 408, 410. As a result, Dr. Horstman stopped prescribing Metformin. R. 410.

On July 22, 2011, Plaintiff saw Dr. Denenny and complained of knee pain after a recent injury to his right knee. R. 490. Dr. Denenny scheduled a left knee scope and ordered an MRI of Plaintiff's right knee. R. 490. On August 3, 201, Plaintiff underwent an arthroscopy of his left knee. R. 468.

On August 21, 2011, Plaintiff went to the emergency room with chest discomfort. R. 494-95. Plaintiff had mild swelling in his left leg but full range of motion in both lower extremities. R. 495. Plaintiff was alert and oriented. R. 495. The treating doctor recommended that Plaintiff avoid caffeine and stimulants. R. 496.

On August 23, 2011, Plaintiff saw Dr. Horstman for chest discomfort. R. 502. Dr. Horstman was diagnosed with palpitations and scheduled a Holter-monitor test. R. 502. The test showed only benign palpitations. R. 493, 498.

On September 2, 2011, Plaintiff underwent an MRI of his right knee, which showed chondromalacia patella, unchanged from January 5, 2011. R. 505. The MRI also revealed "no evidence of internal derangement." R. 505. Four days later Plaintiff received a Synvisc injection in both knees. R. 507.

On October 6, 2011, Anne Winkler, M.D., a non-examining medical expert, opined that Plaintiff had bilateral chondromalacia patella, diabetes, hypertension, and hyperlipidemia. R. 511. Dr. Winkler noted that Plaintiff's knee joints were normal despite having damaged cartilage under his kneecap. R. 512. She opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. R. 514. She believed Plaintiff could stand or walk for six hours in an eight-hour workday, and occasionally balance, climb stairs, bend, kneel, crouch, and stoop. R. 513. She further opined that Plaintiff could never crawl or climb ladders, ropes, or scaffolds. R. 513.

The administrative hearing was held on September 22, 2011. R. 22-44. Plaintiff testified he had pain and numbness in both of his knees. R. 31. Plaintiff said he could walk for five to ten minutes before needing to rest. R. 32. He did not use a cane, but he sometimes used braces when he had to walk "very far." R. 37. Plaintiff testified that he could sit for only five to ten minutes at a time and lies down and elevates his legs four times a day. R. 33-34. Plaintiff said that his medication makes him "foggy" and moody. R. 34.

The administrative law judge ("ALJ") rendered his decision on December 20, 2011. R. 21. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since May 1, 2010, the alleged onset date. R. 14. At step two, the ALJ found Plaintiff had a severe impairment of debilateral chondromalacia patella. R. 14. At step three, the ALJ determined Plaintiff did not have a listed impairment. R. 15. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that the claimant can lift up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. Further, the claimant should never crawl or climb ladders, ropes or scaffolds, but can occasionally stoop, bend, kneel, crouch, balance and climb stairs, and should avoid unprotected heights.

R. 15. Next, the ALJ found that Plaintiff was unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 19-20.

5

Finally, the ALJ concluded Plaintiff had not been under a disability from May 1, 2010, through the date of his decision. R. 20.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A.

Plaintiff alleges the ALJ conducted an improper credibility determination. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

Here, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not fully credible. First, the record reflects that Plaintiff was able to work and perform basic work activities consistent with the RFC while he was incarcerated during the relevant period. R. 454.

Second, the ALJ pointed out that although the record reflects that Plaintiff has bilateral chondromalacia patella, there is insufficient evidence in the record to support the level of limitation alleged by Plaintiff. For example, Plaintiff had a normal range of motion of his extremities during an examination in August 2011. R. 494. An MRI dated September 2, 2011, revealed "no evidence of internal derangement" other than chondromalacia patella. R. 505. Plaintiff also testified that he does not use any assistance (such as a cane) to ambulate and that he only wears braces sometimes when he has to walk "very far." R. 37, 416.

Finally, Plaintiff was noncompliant with his medical treatment, failed to show up at appointments, and refused to take medical tests. R. 393, 400, 401, 406, 412, 443-44, 448. It was reasonable for the ALJ to believe that Plaintiff would have complied with his recommended course of treatment if his symptoms were as severe as alleged. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (in assessing credibility, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failure to take prescribed medications and seek treatment); *Kelley v. Barnhart*, 372 F.3d 958, 960-61 (8th Cir. 2004) (an ALJ may consider a claimant's missed or cancelled appointments). The Court concludes that the ALJ properly analyzed Plaintiff's credibility.

B.

The ALJ determined that Plaintiff's diabetes mellitus did not constitute a severe impairment. The Court concludes there was no error in this finding.

At the second step of the sequential evaluation, the ALJ must determine whether the claimant has a "severe" impairment that lasted or is expected to last for at least twelve or more months. *See* 20 C.F.R. §§ 404.1509; 416.909; 404.1520(A)(4)(ii);

7

416.920(a)(4)(ii). An impairment is severe if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c).

First, the evidence supports the ALJ's conclusion that medication controlled Plaintiff's diabetes. Dr. Horstman first diagnosed Plaintiff with diabetes in December 2010. R. 260-61. At that time, Plaintiff complained of constant fatigue. R. 361. While incarcerated, informed prison medical staff that he was doing "OK" since receiving his diabetes medication. R. 428. In March 2011, Dr. Garcia described Plaintiff's diabetes as "mild" and in "good" control. R. 439-40. Another doctor also noted that medication had controlled Plaintiff's diabetes. R. 450-51. After Plaintiff was released from custody, tests revealed that Plaintiff's glucose levels were normal and Dr. Horstman stopped prescribing Metformin for Plaintiff's diabetes. R. 407-08, 410.

Second, the record does not suggest any functional restrictions due to Plaintiff's diabetes. Although Plaintiff complained that he was fatigued, there is no evidence that it was so severe that it affected his ability to work. At the administrative hearing, Plaintiff testified that he had to lie down four times a day due to his knees, but he never suggested that he had to take a nap or rest due to any diabetes-related symptoms. R. 33-34. During doctors' appointments, Plaintiff was alert and oriented. R. 361, 368, 373, 407, 495.

The Court concludes there is substantial evidence in the record to conclude that Plaintiff's diabetes mellitus was not a severe impairment.

C.

Next, Plaintiff argues the ALJ improperly assigned little weight to Dr. Denenny's opinion. The Court disagrees.

A treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. *E.g.*, *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir.1996).

8

Here, there is substantial evidence in the record as a whole to support the ALJ's decision to assign little weight to Dr. Denenny's opinion. Dr. Denenny's opinion was internally inconsistent because he opined Plaintiff could lift 10 pounds frequently and 5 pounds occasionally. R. 395. His opinion was also not consistent with the subsequent examination of Dr. Horstman in July 2011 that found Plaintiff's right knee deep tendon reflexes and coordination were normal with normal knee strength and tone, and his left knee deep tendon reflexes and coordination were normal with normal knee strength and tone with no instability. R. 407. Finally, Dr. Denenny's opinion was not consistent with a MRI of Plaintiff's right knee that revealed "no evidence of internal derangement" other than chondromalacia patella. R. 505. These are sufficient reasons to assign little weight to Dr. Denenny's opinion.

IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 22, 2013    UNITED STATES DISTRICT COURT